People of the State of Illinois, Plaintiff-Appellee, v. James Raybourn (Impleaded), Defendant-Appellant.

Gen. No. 50,698.

First District, First Division.

June 27, 1966.

Roger K. O'Reilly, of Wheaton, for appellant and James Raybourn, pro se, of Joliet, appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Kenneth L. Gillis, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE KLUCZYNSKI delivered the opinion of the court.

Defendant, James Raybourn, appeals from a bench trial conviction for murder. He and a Stanley Spinks were

charged in a two-count indictment with murder and voluntary manslaughter of one Samuel Seay. Spinks, also found guilty, filed a separate appeal which has been decided by the Third Division.

Raybourn, in the original brief and argument raises the contention that the evidence fails to support a murder conviction and "tends to show at the most guilt of the crime of manslaughter." In a supplemental brief and argument filed pro se, Raybourn argues that he is not legally responsible for the death of Seay and is not guilty of murder or manslaughter.

Margaret Johnson, who lived with Samuel Seay in his mother's home, was walking with him on 47th Street in Chicago at about 1:30 a. m. on April 6, 1963. As they crossed St. Lawrence Avenue, someone called him. He turned and went back around the corner. She continued to a tavern, stayed there a few minutes, came out and saw him around the corner with Raybourn and Spinks. "They were jumping on him. They had him up side the wall and they were hitting him in the stomach." She picked up an empty wine bottle and ran across the street to his aid. Raybourn told her not to come any closer and just after he said that, Spinks took a gun out of his pocket and shot Seay. Raybourn and Spinks then ran away. She ran to a police car parked across the street from the tavern and summoned the police. William Beavers, the police officer in the car who had seen Mrs. Johnson enter and leave the tavern previously, heard the shot and was on his way to the scene. He pursued the two men north on St. Lawrence to an alley near 46th Place where they jumped over a fence and ran into a basement. When they came out of the basement they were arrested and searched. Beavers went into the basement and recovered a .45 caliber army type pistol. After being returned to the scene the men were identified by Mrs. Johnson as the ones "who shot Seay." Spinks, when asked why he

shot Seay, said: "The dirty M. F. should have been killed."

At the police station the men first denied the shooting and stated that Mrs. Johnson had shot Seay. They also said the .45 caliber gun was not the one used. Beavers returned to the basement and recovered another gun, a .25 caliber automatic.

At the trial the defendants testified that they had remonstrated with Seay, who seemed under the influence of liquor, about his participation four hours earlier in an attempted robbery of Raybourn, and also about a statement he was supposed to have made that he intended to rob Spinks. Spinks said that he and Seay were lifelong friends and that the main argument was between Raybourn and Seay, so he walked away and as he turned around he saw Seay reach in his belt for a gun. He jumped on him, grabbed his gun hand and started to wrestle with him. Raybourn seized the other hand also wrestling with him. Raybourn let loose and Spinks took out a gun. One of the guns went off and he did not know whether he or Seay was struck. He panicked and ran away. He did not recall making the remark "I wish I had killed him" or anything else.

Raybourn and Seay were also long-time friends. Raybourn testified that Seay made his living as a robber and pickpocket and that at first Seay joked about the abortive robbery, and then became "somewhat abusive." Spinks got into the argument. Raybourn said he felt something was wrong for Seay to be arguing, since "we" could physically beat him in a fight. So he patted Seay in the midsection with his hand, saying: "You must have a gun somewhere." Raybourn testified that as he "reached," Seay drew back and reached for his gun. Raybourn grabbed one arm and Spinks the other. "We was scuffling." Raybourn then saw Mrs. Johnson pick up a bottle and cross the street. He thought she was

381

going to hit Spinks, whose back was to her. He told her not to come any closer, rushed in and hit her, knocking her down. He testified that he saw Seay fall but did not see him shot. He took Seay's gun from his hand after he fell because he thought Seay was going to shoot Spinks in the back. He ran away and tossed the gun into a garbage can.

The defense also introduced evidence that Spinks had been informed of Seay's intention to rob him; that he had robbed other people.

Raybourn in his pro se brief, argues "that the evidence of the State, viewed in the light most favorable to it, merely shows that the Appellant [Raybourn] and the co-defendant [Spinks] were giving the deceased a thrashing (common design and original purpose); that the deceased's girl friend intervened and Appellant turned away from the altercation in order to remonstrate with her and at that time, for reasons far from clear in the record, 'the co-defendant took a gun out of his pocket and shot Sam Seay.'" He says the killing was clearly not part of the common design or a natural and probable consequence of the common design.

█ Raybourn admits his voluntary participation with Spinks in the thrashing of Seay which necessarily required the use of force and violence that could and did result in Seay's death. He attempts to escape responsibility by saying the shooting was an impulsive act of Spinks for which he is not accountable. We do not agree. It has been consistently held that where one joins others, bent on illegal acts which are dangerous or homicidal in character, or which will probably or necessarily require the use of force and violence that could result in the taking of life unlawfully, he becomes criminally liable for any wrongdoings committed by other members of the group in furtherance of the common purpose, or as a

natural or probable consequence thereof, even though he did not actually participate in the overt act himself. See People v. Hughes, 26 Ill2d 114, 185 NE2d 834 (1962), and People v. Bracken, 68 Ill App2d 466, 216 NE2d 176 (1966).

██ The trial court made comment that he believed the story of the witness, Margaret Johnson, and disbelieved the testimony of the defendants. After examining the record, we find such evaluation to be not so improbable, unreasonable or unsatisfactory as to leave a doubt of Raybourn's guilt. We further hold that the facts adduced, and to which the trial court gave credence, sustain the conviction of murder. The judgment is affirmed.

Affirmed.

MURPHY and BURMAN, JJ., concur.